[Cite as *State v. Spack*, 2026-Ohio-135.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

MATTHEW A. SPACK,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 CO 0022

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 24 CR 633

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed and Remanded.

---

*Atty. Vito Abruzzino*, Columbiana County Prosecutor, and *Atty. Christopher R. W. Weeda*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Ronald D. Yarwood,* DeGenova & Yarwood, Ltd., for Defendant-Appellant.

Dated: January 15, 2026

**DICKEY, J.**

**{¶1}** Appellant, Matthew A. Spack, appeals his consecutive sentences for two counts of Pandering Obscenity Involving a Minor or Impaired Person in violation of R.C. 2907.321(A)(1), felonies of the second degree; five counts of Pandering Obscenity Involving a Minor or Impaired Person in violation of R.C. 2907.321(A)(5), felonies of the fourth degree; and seven counts of Illegal Use of a Minor or Impaired Person in Nudity-Oriented Material in violation of R.C. 2907.323(A)(3), felonies of the fifth degree, following his entry of a guilty plea to all charges in an indictment filed in the Columbiana County Court of Common Pleas. The trial court imposed minimum two-year/maximum three-year sentences for each of the second-degree felonies, and six-month sentences for each of the fourth and fifth-degree felonies (the minimum sentence for each crime), with all sentences to run consecutively, for a minimum sentence of ten years.

**{¶2}** Appellant advances three assignments of error. First, he contends defense counsel provided ineffective assistance based on defense counsel's failure to vigorously advocate for a lesser sentence at the sentencing hearing. Second, Appellant argues, and the state concedes, the trial court failed to include its findings on the imposition of consecutive sentences in the sentencing entry. Finally, Appellant asserts the imposition of consecutive sentences is not supported by the record. For the following reasons, we find defense counsel was not ineffective and affirm the trial court's imposition of consecutive sentences, but remand this matter for the issuance of a nunc pro tunc sentencing order that includes the statutorily-required language regarding the imposition of consecutive sentences.

## FACTS AND PROCEDURAL HISTORY

**{¶3}** The following facts are taken from a task force investigation report attached to the presentence investigation report ("PSI"). On June 17, 2024, a cloud-based storage company that contracts with Verizon flagged two videos uploaded to their servers, which were believed to contain child sexual abuse material ("CSAM"). The videos were forwarded to the National Center for Missing and Exploited Children, where they were classified then forwarded to local law enforcement. The flagged videos depicted a "young juvenile female being sexually penetrated by a male," and a "prepubescent female child

being forcibly penetrated sexually by a male." On September 30, 2024, a third video was uploaded depicting an "adult female performing oral sex on a juvenile male child appearing to be under 10 years of age." The videos were uploaded to the servers by way of a mobile telephone traced to Appellant.

**{¶4}** On June 18, 2024, the social media application, Kik, flagged five videos containing CSAM, which were traced to Appellant. For instance, one of the five videos depicted "two juvenile female children naked, kissing and fondling each other. Their breasts, buttocks and vaginal areas are exposed to the camera."

**{¶5}** On November 13, 2024, a search warrant was executed at Appellant's residence. Law enforcement seized property, including a "Galaxy [mobile telephone]," an external drive, and a DVD. Appellant conceded he exchanged images on Kik. The Galaxy device contained "five images of very young pre-pubescent minors which would be considered obscene," and seven images of minors "in a state of nudity."

**{¶6}** Appellant was indicted on December 16, 2024 for the fourteen crimes for which he was later convicted. Appellant executed a written plea agreement on March 31, 2025, wherein the state documented its intention to seek the minimum sentence for each crime, with the sentences to run consecutively. The state further documented its intention to oppose a sentence of community control.

**{¶7}** At the plea hearing that same day, the state reiterated its intention to seek the minimum sentence for each crime, to be served consecutively, for an aggregate minimum sentence of ten years, and to oppose a community control sentence. Defense counsel acknowledged at the plea hearing that Appellant would be required to register as a Tier II sex offender.

**{¶8}** Defense counsel requested the preparation of a PSI, arguing it would "assist the [trial court] in regards to the question of consecutive or concurrent argument [sic] on behalf of [Appellant.]" (Plea Hrg., p. 4.) The PSI established Appellant was twice charged with drug abuse, both minor misdemeanors. The first charge in 2008 was dismissed. He was convicted of the second charge in 2020 and fined $150, plus costs.

**{¶9}** At the sentencing hearing on June 6, 2025, the state argued Appellant's crimes were "on the more serious end," and advocated for minimum, consecutive sentences. (Sent. Hrg., p. 2-3.) Defense counsel argued Appellant had virtually no

criminal history. Defense counsel recognized the terms of the plea agreement, then stated he "wouldn't be doing [his] job if [he] didn't ask the [trial court's] consideration and [sic] imposing a lesser penalty than those recommended by the state." (*Id.*, p. 4.) Defense counsel continued, "I understand the state's position in this regard, but I would ask the [trial court] to look back at his record." (*Id.*)

{¶10} During allocution, Appellant provided the following explanation for his crimes:

> I was on a bunch of different apps like Kik, Instagram, stuff like that. All those apps were set to autosave, all pictures, videos, everything like that.
>
> And I did not know that I was being sent inappropriate stuff, but I do realize now that it was wrong for me to even be on the apps in the first place because of my counseling. . . . I've been in counseling with my – for my porn addiction. It's only been a couple of sessions.

(*Id.* at p. 5.)

{¶11} The trial court responded:

> Instagram is not a porn site unless you're seeking it.
>
> So either take responsibility for what your role is, instead of acting like you're innocent and like all this stuff just – all this porn just started coming in waves to me, and, oh, my goodness, I didn't know.

(*Id.* at p. 5-6.)

{¶12} Appellant replied:

> I do take responsibility.
>
> . . .

I'm sorry, ma'am. But I – I realized that the apps sent me stuff I didn't want. I wasn't actually seeking that, I was seeking pictures and videos of adult women.

And they were sending me stuff I didn't want. Every time they did, I would report them and block them immediately. I wasn't trying to seek child pornography, I was looking for real porn.

(*Id.* at p. 6.) Appellant then added, "I take care of my mom and the least sentence I can get would be helpful." (*Id.* at p. 7.)

**{¶13}** Appellant continued to assert the applications automatically save videos and images. The trial court "agree[d] to disagree." (*Id.* at p. 9.)

**{¶14}** Next, the trial court stated it had reviewed the PSI and opined "it is disgusting." The trial court explained, "[t]he reason it is so horrific and why there is an actual task force assigned to try to reduce this type of internet behavior is because there are actual children who are sexually abused in these videos. These are real people." (*Id.* at p. 10.) The trial court observed the seriousness factors relating to Appellant's crimes were "beyond anything [the trial court] could even comprehend." (*Id.* at p. 14.)

**{¶15}** Appellant responded the videos were sent to him by "random people" on Kik and WhatsApp, however he ultimately conceded he opened the videos. He claimed that he deleted, blocked, and reported, any video involving children. (*Id.* at p. 11-12.)

**{¶16}** Prior to imposing sentence, the trial court acknowledged Appellant's Ohio Risk Assessment System ("ORAS") score was moderate. Further, the trial court observed Appellant had admitted to smoking eight to nine marijuana cigarettes a day in the PSI and asked him if he thought he had a problem. Appellant responded, "[p]robably, but I enjoy it." (*Id.* at p. 14.)

**{¶17}** Although not acknowledged during the sentencing hearing, Appellant has two children and was over $5,000 in arrears in his child support obligation. Appellant was unemployed and relied on "odd jobs" and family members for financial support. He lost his previous job as a chef at the Spread Eagle Tavern in March of 2024 because he failed to appear for work or report his inability to appear three times.

**{¶18}** In imposing consecutive sentences, the trial court made the following findings at the sentencing hearing:

> The [trial court] has to consider whether to impose these sentences concurrent or consecutively. The factors the [trial court] must consider are in [R.C.] 2929.14(C)(4).

> The [trial court] does find that consecutive sentences are necessary to protect the public from future crime, and to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct, and the [trial court] finds that at least two of the multiple offenses were committed as part of one or more courses of conduct, and that the harm cause by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of those offenses committed as a part of any course of conduct adequately reflect the seriousness of the offender's conduct.

(*Id.* at p. 15-16). The trial court did not include the forgoing findings in the sentencing entry.

**{¶19}** Each of the second degree felonies are subject to a term ranging from two to eight years. Each of the fourth degree felonies are subject to a term of imprisonment ranging from six to eighteen months. Each of the fifth degree felonies are subject to a term of imprisonment of six to twelve months. The ten-year minimum sentence does not appear to be inconsistent with sentences for multiple pandering obscenity crimes and is far less than the maximum term the court could have imposed.

**{¶20}** This timely appeal followed. Appellant contends defense counsel provided ineffective assistance based on defense counsel's failure to vigorously advocate for a lesser sentence at the sentencing hearing. Appellant further argues, and the state concedes, the trial court failed to include its findings on the imposition of consecutive sentences in the sentencing entry. Lastly, Appellant asserts the imposition of consecutive sentences is not supported by the record. The second and third assignments of error are related and addressed together for judicial economy and ease of analysis.

## ANALYSIS

## ASSIGNMENT OF ERROR NO. 1

**APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING, DEPRIVING HIM OF HIS RIGHTS PURSUANT TO BOTH THE UNITED STATES AND OHIO CONSTITUTIONS.**

**{¶21}** A claim of ineffective assistance of counsel requires a showing of both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Consequently, if the performance was not deficient, then there is no need to review for prejudice and vice versa. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

**{¶22}** In evaluating alleged deficient performance, a reviewing court must determine whether there was "a substantial violation of any of defense counsel's essential duties to his client" so that "counsel's representation fell below an objective standard of reasonableness." *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), citing *Strickland* at 687-688. Appellate review is highly deferential to counsel's decisions as there are "countless ways to provide effective assistance in any given case" and there are strong presumptions that the decisions fell within the wide range of reasonable professional assistance. *Id.* at 142, citing *Strickland* at 689. A reviewing court must refrain from second-guessing the strategic decisions of counsel. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).

**{¶23}** With respect to prejudice, an appellant must show there is a reasonable probability the result of the proceedings would have been different but for the serious errors committed by counsel. *Id.* at 557-558. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair due to the performance of trial counsel. *Id.*, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). Lesser tests of prejudice have been rejected: "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Bradley* at 142, fn. 1, quoting *Strickland* at 693.

**{¶24}** Appellant argues defense counsel offered an anemic argument regarding the imposition of a lesser sentence in this case, as defense counsel relied solely on

Appellant's limited criminal history. Appellant cites no case law where a defense counsel's argument at sentencing constituted deficient performance. Appellant relies exclusively on the *Strickland* standard.

**{¶25}** Appellant argues defense counsel did not address any of the following facts: Appellant is 38 years old and the father of two children. He plead to the entire indictment and accepted responsibility. Although Appellant abused marijuana, he had otherwise performed well under the conditions of bond. Appellant was engaged in treatment for his pornography addiction and had a moderate ORAS score. He was drug dependent and had a history of being physically and mentally abused by his stepfather (according to the PSI, it was his father). Finally, Appellant argues "[d]efense counsel should have attempted to object to the use of [the] information in the PSI [the task force investigation report] or at least attempt to clarify that [the] information appears to have been used as a basis for probable cause for the search on November 13, 2024." (Appellant's Brf., p. 10.)

**{¶26}** First, the trial court did not find Appellant accepted responsibility. To the contrary, the trial court agreed to disagree with Appellant's characterization of his crimes. Appellant concedes in his appellate brief that he "attempt[ed] to minimize his conduct, and this was a point of contention with the [trial court.]" (*Id.*) Next, Appellant argues he was drug dependent. However, Appellant did not seek counseling for his alleged drug dependency. Further, when asked by the trial court whether he believed he had a problem, Appellant flippantly responded, "[p]robably. But I like it."

**{¶27}** Of greater import, all of the facts advanced by Appellant in his brief were available to the trial court in the PSI, which Appellant concedes the trial court had reviewed. Further, most of the information did not recommend a lesser sentence (Appellant's age, employment status, child support obligation, marijuana use, and reliance on family members for financial support). Defense counsel's silence with respect to the forgoing facts may reflect a strategic decision to avoid raising facts that may be reasonably interpreted as aggravating rather than mitigating circumstances. As all of the foregoing information was already in the record, had been reviewed by the trial court, and did not necessarily support the imposition of a lesser sentence, we find defense counsel's performance in failing to raise the information at the sentencing hearing did not fall below an objective standard of reasonableness.

**{¶28}** With respect to the information in the task force investigation report, Appellant contends defense counsel should have clarified that the information was used as a basis for probable cause. However, like the evidence in the PSI, defense counsel may have strategically chosen to avoid any discussion of the information in the task force investigation report based on the descriptions of the images contained therein.

**{¶29}** Even assuming Appellant can establish defense counsel's deficient performance, he cannot show he suffered prejudice as a result of counsel's failure to advocate for a lesser sentence. Despite the trial court's admonition regarding Appellant's alleged acceptance of responsibility, Appellant continued to argue the images of child pornography were unsolicited and autosaved to his mobile telephone. The trial court expressed disgust and horror regarding the downloaded images, as well as profound concern for the young and defenseless victims of Appellant's multiple crimes. Beyond Appellant's crimes, he was in arrears with his child support obligation, he had essentially quit his job due to his failure to comply with the rules regarding attendance, he was relying on family members for his own support despite being able-bodied and responsible for the care and expense of two children, and he conceded his daily marijuana use was a problem. In other words, it is highly unlikely that even the most vigorous argument in favor of a lesser sentence would have been successful given the trial court's reaction to the contents of the PSI.

**{¶30}** Accordingly, we find defense counsel's performance was not deficient, and, in the alternative, Appellant suffered no prejudice. Therefore, we find Appellant's first assignment of error has no merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN ITS FAILURE TO ARTICULATE THE CONSIDERATIONS AND FINDINGS FOR A CONSECUTIVE SENTENCE ITS SENTENCING ENTRY DATED JUNE 6, 2025.**

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT TO CONSECUTIVE SENTENCES.**

Case No. 25 CO 0022

**{¶31}** We utilize R.C. 2953.08(G) as the standard of review in all felony sentencing appeals. *State v. Michaels*, 2019-Ohio-497, ¶ 2 (7th Dist.), citing *State v. Marcum*, 2016-Ohio-1002, ¶ 1.

**{¶32}** R.C. 2953.08(G) reads in pertinent part:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2)(a)-(b).

**{¶33}** There is a statutory presumption in favor of concurrent sentences pursuant to R.C. 2929.41(A). However, R.C. 2929.14(C)(4) reads:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness

of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

**{¶34}** Although the trial court is not required to recite the statute verbatim or utter "magic" or "talismanic" words, there must be an indication that the court found: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger posed to the public, and (3) one of the findings described in R.C. 2929.14(C)(4)(a), (b), or (c). *State v. Bellard*, 2013-Ohio-2956, ¶ 17 (7th Dist.). However, the trial court need not give its reasons for making those findings. *State v. Power*, 2013-Ohio-4254, ¶ 38 (7th Dist.). A trial court must make the consecutive sentence findings at the sentencing hearing and must additionally incorporate the findings into the sentencing entry. *State v. Williams*, 2015-Ohio-4100, ¶ 33-34 (7th Dist.), citing *State v. Bonnell*, 2014-Ohio-3177, ¶ 37.

**{¶35}** Appellant contends his sentence is disproportionate to his crimes. He writes:

[Appellant was] thirty-eight (38) years old. Although there was an investigation his arrest prior [sic] that involved flagged videos, his indictment alleges that all of the offenses occurred on the same day. His ORAS was moderate, and he had sought an assessment and treatment from The Counseling Center of Columbiana County. Everything in his criminal, family, educational, and employment history indicates a concurrent sentence would have been sufficient to protect the public and punish the offender. Indeed, the sentencing court imposed the minimum sentence in the sentencing range for each offense and yet imposes all the sentences to run consecutive to one another.

(Appellant's Brf., p. 12-13.)

**{¶36}** "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 2016-Ohio-1002, ¶ 1. The Ohio Supreme Court has explained " 'clear and convincing evidence' is a degree of proof that is greater than a preponderance of the evidence but less than the beyond-a-reasonable-doubt standard used in criminal cases." *State v. Glover*, 2024-Ohio-5195, ¶ 46, citing *State v. Gwynne*, 2023-Ohio-3851, ¶ 14. It "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶37}** In *Glover*, the Ohio Supreme Court clarified the considerable burden appellants must satisfy in order to show that the imposition of consecutive sentences is not supported by the record:

The appellate-review statute does not require that the appellate court conclude that the record supports the trial court's findings before it may affirm the sentence. Rather, the statute only allows for modification or vacation *only when the appellate court "clearly and convincingly finds" that the evidence does not support the trial court's findings.* R.C.

2953.08(G)(2)(a). "This language is plain and unambiguous and expresses the General Assembly's intent that appellate courts employ a deferential standard to the trial court's consecutive-sentence findings. R.C. 2953.08(G)(2) also ensures that an appellate court does not simply substitute its judgment for that of a trial court." *Gwynne*, 2023-Ohio-3851, 231 N.E.3d 1109, at ¶ 15 (lead opinion).

(Emphasis added) *Glover* at ¶ 46.

**{¶38}** The authority of an appellate court in Ohio to vacate a sentence is closely circumscribed by the plain language of R.C. 2953.08(G). We are prohibited from vacating a sentence because we would have imposed a lesser sentence or because there is clear and convincing evidence in the record that supports the imposition of a lesser sentence. In order to vacate Appellant's sentence, we must find there is no clear and convincing evidence supporting his sentence. In other words, we must have a firm belief or conviction that consecutive sentences are not supported by the record.

**{¶39}** Here, Appellant entered guilty pleas to fourteen separate incidents of downloading child pornography. At the sentencing hearing, Appellant characterized himself as the victim, alleging other individuals sent the unsolicited criminal material and it was autosaved to his mobile telephone by the applications fourteen times. Although Appellant sought counseling for pornography addiction, the assessment was completed while he was jailed, and he abandoned his treatment immediately after he was released on bond, allegedly due to difficulty contacting the counseling center. Appellant did not resume treatment until a few months before he entered his plea. Despite smoking eight or nine marijuana cigarettes a day, Appellant made no effort to address his admitted problem through drug counseling. He was unemployed as of the date of sentencing, due to his failure to comply with his employer's rules governing attendance, and despite his financial responsibilities for the care of his two children. He preferred to rely on odd jobs and the financial assistance of family members to sustain his own existence.

**{¶40}** Appellant diminished his crimes at the sentencing hearing and attempted to avoid culpability by blaming others. His pronounced lack of direction and indifference regarding his marijuana use demonstrate a lack of recognition of the serious nature of his

crimes as well as create ample opportunity for Appellant to reengage in his previous criminal behavior. Of equal import, the demand for child pornography fuels its production, which unduly harms innocent children. Finally, the trial court could have imposed a maximum sentence of eight years for either or both of the second-degree felonies. As a consequence, we find there is not clear and convincing evidence in the record that demonstrates consecutive sentences are not supported by the record. Accordingly, we find Appellant's third assignment of error has no merit.

**{¶41}** Finally, the state concedes error as the trial court failed to incorporate its findings of fact regarding the imposition of consecutive sentences in the sentencing entry. Therefore, we find Appellant's second assignment of error has merit and remand this matter for the issuance of a nunc pro tunc order incorporating the consecutive sentences findings in the sentencing entry.

## CONCLUSION

**{¶42}** For the foregoing reasons, we find defense counsel was not ineffective and affirm the trial court's imposition of consecutive sentences, but remand this matter for the issuance of a nunc pro tunc sentencing order that includes the statutorily-required language regarding the imposition of consecutive sentences.

Waite, P.J., concurs.

Hanni, J., concurs.

Case No. 25 CO 0022

—————————————

For the reasons stated in the Opinion rendered herein, we find defense counsel was not ineffective and we affirm the trial court's imposition of consecutive sentences, but remand this matter to the Court of Common Pleas of Columbiana County, Ohio, for the issuance of a nuc pro tunc sentencing order that includes the statutorily-required language regarding the imposition of consecutive sentences. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**